UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Paul Tremblay, et al**, | Miscellaneous Action No. 25-118 |
| Plaintiff, | |
| v. | |
| **OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI**, | Related to *In Re OpenAI ChatGPT Litigation,* Master File No. 23-cv-03223-AMO, ND CAL |
| Defendant. | |

**Notice of Motion and Motion to Quash and Transfer Rule 45 Subpoenas**

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 26, 34, and 45, Non-Parties Paul Tremblay, et al. ("Plaintiffs") move this court, on a date and time to be set by the Court, to quash the Subpoenas to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action served on Charlotte Seedy Literary Agency, Aragi, Inc., Burnes & Clegg, Inc, The Wylie Agency, Inc., Vicky Bijur Literary Agency, Trident Media Group, LLC, Dan Strone, Don Congdon Associates, Inc., Watkins/Loomis Agency, Inc., Howard Morhaim Literary Agency, Inc., Inkwell Management LLC, and Curtis Brown Ltd., to transfer the Motion to Quash to the Northern District of California and for entry of the annexed Proposed Order.

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................4

II.   BACKGROUND .................................................................................................5

III.  ARGUMENT .....................................................................................................7

    A.   Plaintiffs Have Standing to Quash the Subpoenas ...................................7

    B.   The Requests Are Unduly Burdensome .....................................................9

        i.    The documents sought are within the possession and control of the Plaintiffs ...............................................................................10

        ii.   The requests are overbroad and irrelevant ................................12

        iii.  The subpoenas impose an undue burden on the non-parties...................14

    C.   The Requests Improperly Annoy and Embarrass Plaintiffs...............................15

    D.   Transfer to the Northern District of California is Appropriate ...........................16

    E.   The Court Should Award Plaintiffs Costs and Fees ...............................17

IV.   CONCLUSION ................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agincourt Gaming, LLC v. Zynga, Inc.*,
   2014 WL 4079555 (D. Nev. Aug. 15, 2014) .............................................................. 16

*Akkawi v. Sadr*,
   2022 WL 17722605 (E.D. Cal. Dec. 15, 2022) ..................................................... 10, 14

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ........................................................................7

*Del Campo v. Kennedy*,
   236 F.R.D. 454 (N.D. Cal. 2006) ...............................................................................9

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d. 779 (9th Cir. 1994) ...................................................................................10

*Glass Egg Digit. Media v. Gameloft, Inc.*,
   2019 WL 4166780 (N.D. Cal. Sept. 3, 2019) ....................................................... 10, 14

*Graham v. Casey's Gen. Stores*,
   206 F.R.D. 251 (S.D. Ind. 2002) .............................................................................15

*Joiner v. Choicepoint Servs., Inc.*,
   2006 WL 2669370 (W.D.N.C. Sept. 15, 2006) ...................................................... 8, 11

*Life Alert Emergency Response, Inc. v. Connect America.com LLC*,
   2015 WL 12765465 (C.D. Cal. Jan. 23, 2015) ..........................................................12

*In Re OpenAI ChatGPT Litig.*,
   Master File No. 23-cv-3223-AMO (N.D. Cal.) ....................................... 4, 5, 9, 12

*Palumbo v. Shulman*,
   1998 WL 720668 (S.D.N.Y. Oct. 13, 1998) .............................................................7, 8

*In re Pioneer Corp.*,
   2019 WL 5401015 (C.D. Cal. Jan. 9, 2019) ........................................................ 9, 10

*Richards v. Convergys Corp.*,
   2007 WL 474012 (D. Utah Feb. 7, 2007) ............................................................. 8, 15

*Schmulovich v. 1161 Rt. 9 LLC*,
   2007 WL 2362598 (D.N.J. Aug. 15, 2007) ..................................................................8

*Vena v. Moore, Schulman & Moore, APC*,
    2023 WL 6194315 (S.D. Cal. Mar. 24, 2023) .................................................................. 10, 12

**Other Authorities**

Fed. R. Civ. P. 26 ...............................................................................................................9, 12, 15

Fed. R. Civ. P. 45 ................................................................................................................ 7, 9, 16

## I.     INTRODUCTION

Plaintiffs bring this Motion seeking to quash the subpoenas issued to Charlotte Seedy Literary Agency, Aragi, Inc., Burnes & Clegg, Inc., The Wylie Agency, Inc., Vicky Bijur Literary Agency, Dan Strone, Don Congdon Associates, Inc., Watkins/Loomis Agency, Inc., Howard Morhaim Literary Agency, Inc., Inkwell Management LLC, and Curtis Brown Ltd. The subpoenas arise out of a highly contentious class action pending in the Northern District of California alleging class-wide copyright infringement claims against the Generative Artificial Intelligence ("AI") company OpenAI and related entities. These subpoenas are the latest effort by OpenAI to "us[e] the discovery process, at least in part, to engage one another in a warfare of sorts, that is, by attempting to fashion certain discovery disputes in order to harass one another's flanks as might be the case during a game of chess or on a medieval battlefield." *In Re OpenAI ChatGPT Litig.*, Master File No. 23-cv-3223-AMO, Dkt. 357, (N.D. Cal. Feb., 27, 2025).

After not getting the result it wanted through its request to compel documents from Plaintiffs in the Northern District of California, OpenAI is now attempting an end-run around that Court's ruling by serving subpoenas on Plaintiffs' agents, nonparties to the underlying litigation, seeking the same documents. This is plainly improper—it is fundamental of the Federal Rules of Civil Procedure that parties to litigation may not unduly burden nonparties. And seeking documents from a nonparty that it could have sought from an adverse party is definitionally undue burden under Rule 45. For that reason alone, the subpoenas should be quashed.

Additionally, because the issues presented here so closely track the discovery disputes occurring in the Northern District of California, this Court should transfer the Motion to Quash

to the issuing court, the Northern District of California. Many of the agents subject to the subpoenas in the instant district do not object to transfer under Rule 45(f). Whichever Court hearing the Motion should quash the subpoenas for circumventing ordinary discovery procedures and improperly imposing an undue burden on third parties.

## II.    BACKGROUND

Plaintiffs are authors asserting copyright infringement claims on behalf of themselves and a class of similarly situated individuals against the Generative AI company OpenAI. *In Re OpenAI ChatGPT Litig.*, Master File No. 23-cv-3223-AMO, Dkt. 120, (N.D. Cal.) (First Consolidate Amended Complaint, "FCAC"). Plaintiffs allege that OpenAI and related entities used their copyrighted material to train its large language models, including those that underly ChatGPT, without Plaintiffs' consent, credit, or compensation. *Id.* ¶ 34. In training the models, OpenAI unlawfully accessed and used pirated data, including copies of Plaintiffs' copyrighted works, to train its LLMs. OpenAI has asserted, among other defenses, that its use of Plaintiffs' works falls under the "fair use" exception. *Id.*, Dkt. 176, at 2 (N.D. Cal.) (Answer).

Throughout the course of discovery, the parties have joined a host of discovery disputes before the Court. One of the latest disputes closely relates to these subpoenas: On February 20, 2025, OpenAI sought to compel the production of documents from Plaintiffs' agents, including the literary agents subject to the subpoenas at issue here, despite Plaintiffs' argument that they have already conducted a reasonably diligent search for and production of responsive documents within the agents' possession. *Id.*, Dkt. No. 337 at 2. In response, the Court issued an Order requiring the Parties to meet and confer further about the dispute. *Id.*, Dkt. No. 357 at 4. Critically, Plaintiffs did not dispute possession, custody or control of the documents sought, nor

did Magistrate Judge Illman find otherwise.

Rather than follow the Order and meet and confer with Plaintiffs, on the very same date the Court entered its Order, OpenAI noticed subpoenas for Plaintiffs' literary agents Decl. of Melissa Tribble ¶ 3–4. Defendants noticed the subpoenas to Charlotte Seedy Literary Agency, Aragi, Inc., Burnes & Clegg, Inc, The Wylie Agency, Inc., and Vicky Bijur Literary Agency on February 27, 2025 and then served those subpoenas on these agents shortly thereafter. *Id.* ¶ 4. The following week, on March 6, 2025, OpenAI noticed subpoenas for additional agents Dan Strone, Don Congdon Associates, Inc., Watkins/Loomis Agency, Inc., Howard Morhaim Literary Agency, Inc., Inkwell Management LLC, and Curtis Brown Ltd. *Id.* ¶ 5. These subpoenas ordered each of these agents and agencies to comply in this district. OpenAI also noticed subpoenas for Ginger Clark, with compliance to occur in the District of Connecticut, and Creative Artists Agency, LLC, with compliance to occur in the Central District of California. *Id.* ¶ 6. Plaintiffs have, or intend to, bring motions to quash the subpoenas in those districts as well.[1] *Id.*

Only after Plaintiffs requested to meet and confer on the subpoenas and objected that OpenAI had failed to follow the Court's Order did OpenAI agree to meet and confer as required by the Order. *Id.* ¶¶ 8, 12. During the course of that conferral, and weeks after OpenAI issued its initial subpoenas, it came to light that there are discrete categories of information OpenAI argues are missing: communications exclusively in the agent's possession regarding the negotiation of licensing agreements, and documents in the agent's possession related to AI training. *Id.* ¶ 13. In

---

[1] Each of the subpoenas make identical requests, and, Plaintiffs argue, are improper for the same reasons. Accordingly, Plaintiffs refer to the subpoenas collectively.

good faith, Plaintiffs agreed to go back to the agents and request those discrete documents. *Id.* However, on the eve of the date of compliance for at least some of these subpoenas, OpenAI upended the agreement. *Id.* ¶15. It insisted that Plaintiffs search the files of over 60 individuals, including some who have not worked at the agencies for many years. *Id.*

Plaintiffs bring the present Motion to Quash the subpoenas issued to Charlotte Seedy Literary Agency, Aragi, Inc., Burnes & Clegg, Inc, The Wylie Agency, Inc., Vicky Bijur Literary Agency, Dan Strone, Don Congdon Associates, Inc., Watkins/Loomis Agency, Inc., Howard Morhaim Literary Agency, Inc., Inkwell Management LLC, and Curtis Brown Ltd. pursuant to Rule 45(d)(3)(A), and request that the Court transfer this motion to the issuing court, the Northern District of California, under Rule 45(f). Fed. R. Civ. P. 45. Nonparties Howard Morhaim Literary Agency, Curtis Brown Ltd., Inkwell Management LLC, Vicky Bijur Literary Agency, Don Congdon Associates, Inc., Aragi, Inc., and Watkins Loomis Agency, Inc. consent to transfer to the Northern District of California under that same Rule. Decl. of Melissa Tribble ¶ 16; Decl. of Alexander J. Sweatman ¶ 2.

## III.    ARGUMENT

### A.    Plaintiffs Have Standing to Quash the Subpoenas

Although a party does not generally have standing to quash a subpoena served on a third party, courts have routinely found standing where the party has a personal right with respect to the documents requested. *See Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010) (collecting cases). A party has a personal right to documents which concern the party itself, such as bank records and personnel files. *See Palumbo v. Shulman*, 1998 WL 720668, at *1 (S.D.N.Y. Oct. 13, 1998) (finding that the party had standing to quash a subpoenas seeking

documents that "belong" to the party); *see also, e.g.*, *Richards v. Convergys Corp.*, 2007 WL 474012, at *1 (D. Utah Feb. 7, 2007) (finding that "a party has a personal right in his employment records sufficient to confer standing."); *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (same with respect to bank records).

The documents sought in OpenAI's subpoenas are documents in which Plaintiffs' have a personal right and interest, much like employment or bank records. The requests seek documents related to the Plaintiffs' published works, including, *inter alia*, "Documents Relating to any alleged reproduction, public display, or distribution of the Published Works by OpenAI, Including but not limited to the allegations in the Complaint;" "Documents and Communications Relating to the Plaintiff's ownership of their Published Works;" and "All agreements Relating to the Published Works, Including licenses and work-for-hire agreements." These types of documents are similar to financial records and personnel records in that Plaintiffs and Plaintiffs' works are the subject of the documents.[2] Therefore, Plaintiffs have a personal right or interest in those documents sufficient to confer standing to move to quash.

Further, a party has standing to quash where the documents sought are in the possession, custody, or control of the party. *Palumbo v. Shulman*, 1998 WL 720668, at *1 (finding standing where the requesting party had acknowledged that the "sought-after documents are within defendants' possession, custody and control."); *see also Joiner v. Choicepoint Servs., Inc.*, 2006 WL 2669370, at *4 (W.D.N.C. Sept. 15, 2006) (finding that a subpoena served on an employee of the defendant was served in the employee's capacity as a representative of the defendant, and

---

[2] These requests are also substantially identical to the requests OpenAI originally moved on in the Northern District of California.

therefore, the subpoena was effectively a subpoena of the defendant itself). As OpenAI has previously conceded, *In Re OpenAI ChatGPT Litig.*, Dkt. 337, Plaintiffs have possession, custody, or control over the documents they now seek by way of their agency relationship with each of these entities. Accordingly, both because Plaintiffs have an interest in the documents, and because they are in possession or control of the documents, they have standing to bring this Motion.

### B.    The Requests Are Unduly Burdensome

Federal Rule of Civil Procedure 45, governing subpoenas to nonparties, incorporates the scope of Rule 26. *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006). Courts must balance the importance of the issues, the amount in controversy, the parties' relative access to information and resources, and the discovery's potential impact on resolving the case, against its burden or expense. *Id.* A court must limit discovery where it determines "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Under Rule 26, a court should "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. Pro 26(b)(1), and under Rule 45 courts must "quash or modify a subpoena that subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A). Non-parties are entitled to special protection from subpoenas. *See In re Pioneer Corp.,* 2019 WL 5401015, at *5 (C.D. Cal. Jan. 9, 2019) ("[T]he unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *see also* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a [][nonparty] subject to the subpoena.").

Courts have broad discretion to determine whether a subpoena is unduly burdensome. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d. 779, 779 (9th Cir. 1994). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and, in particular, requires the court to consider ... 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *5 (S.D. Cal. Mar. 24, 2023) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).) When evaluating undue burden, courts consider the requesting party's need for the information, the burden on the nonparty, the information's relevance, and the breadth of the request. *In re Pioneer Corp.*, 2019 WL 5401015, at *4-5. If the requesting party can obtain the same information without burdening a nonparty, a court should quash the subpoena. *Id*. at *5.

### i.    The documents sought are within the possession and control of the Plaintiffs

Here, the requests unduly burden the non-party agents and agencies because the documents sought can be obtained through normal party discovery. *See Glass Egg Digit. Media v. Gameloft, Inc.*, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019) (finding a third party subpoena overly burdensome because "the vast majority of the discovery sought by . . . third party subpoenas can be obtained directly from [a party]"); *Akkawi v. Sadr*, 2022 WL 17722605, at *2 (E.D. Cal. Dec. 15, 2022) ("Courts routinely disallow discovery from third parties where the same discovery is easily obtained from a party."). OpenAI has repeatedly acknowledged that Plaintiffs' agents, and thus the documents they possess within the scope of their agency relationship, are within the possession, custody, or control of Plaintiffs themselves.  The

documents requested through the subpoenas largely mirror OpenAI's Rule 34 Requests for production served on Plaintiffs. Accordingly, OpenAI has conceded that it can obtain the requested documents through party discovery without burdening non-parties. OpenAI issued these subpoenas not because it cannot obtain the discovery elsewhere, but because it was dissatisfied with the issuing court's decision rejecting its attempt to compel production of documents. Rather than the burdening third parties and this Court, OpenAI should be bound by the issuing court's order.

In *Joiner v. Choicepoint Services, Inc.*, the court held, based on similar facts, that the Rule 45 subpoena was an effort to improperly circumvent Rule 34 party discovery. There, the plaintiff's document requests to the employee were encompassed by the requests plaintiffs had already served on the defendant under Rule 34. The plaintiff had moved to compel production of that discovery, and the court denied the motion to compel. Because the requests served on the employee were the subject of the requests for production and the motion to compel, the court quashed the subpoena on the basis that the subpoena was a "clear attempt[] to undermine not only the Federal Rules of Civil Procedure but also this Court's orders."

The result should be the same here under the nearly identical circumstances presented here. Defendants have already sought the same documents from Plaintiffs, which they have repeatedly acknowledged are within Plaintiffs' possession, custody, or control, by way of the representative capacity of the agents. Although Plaintiffs have produced responsive documents, including those from their agents, OpenAI sought to compel the production of those documents. The court in the Northern District of California has already issued a ruling on that motion requiring the parties to meet and confer further about the requests. *In Re OpenAI ChatGPT*

11

*Litigation*, Dkt. 357. There the court ordered that, "[t]hereafter . . . the matter will be concluded and OpenAI will have to accept the productions and certifications it has received." *Id.* The subpoenas attempt an end-run around that order. Rather than OpenAI attempting to meet and confer following the Order, OpenAI chose instead to notice the subpoenas. OpenAI's gamesmanship should not be rewarded, especially at the expense of the third party agents and agencies.

ii.    **The requests are overbroad and irrelevant**

Not only do the subpoenas seek documents that should be obtained from Plaintiffs, but Plaintiffs have also objected to the similar document requests as seeking documents which are overbroad and irrelevant.  The scope of discovery and procedures for document production under Rule 45 are the same as Rule 34, and subject to the limitations of Rule 26. Fed. R. Civ. P. Advisory Comm. Notes (1970) and (1946). Accordingly, requested documents must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Sweeping requests for 'all documents' that may encompass swaths of both relevant and irrelevant documents" are outside the scope of discovery. *See Life Alert Emergency Response, Inc. v. Connect America.com LLC*, 2015 WL 12765465, at *7 (C.D. Cal. Jan. 23, 2015). Moreover, "the 'mere relevance standard [ ] does not apply to nonparties.' A party seeking to obtain discovery from a nonparty 'must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure.'" *Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *3.

First, OpenAI's requests are wildly overbroad considering that OpenAI has identified only two discrete categories of documents that Plaintiffs have not already collected and produced: communications related to negotiations of publishing and licensing agreements, and

12

documents related to licensing for AI training. Instead, OpenAI's twenty-four requests sweep in documents that are neither relevant nor proportional to the needs of the case, and seek documents even beyond the scope of what Plaintiffs have agreed to produce in the underlying case. For example, Requests 2–9, 14–21, and 23–24 seek documents related to all of Plaintiffs' "Published Works" which OpenAI defines to include "any work created by Your Client, including both the Asserted Works and other works not referenced in the Complaint." *See* Schedule A. These requests are overbroad because they seek documents related to books that are not currently the subject of Plaintiffs' claims. For some Plaintiffs, this includes dozens, and up to hundreds, of works. In the similar Requests for Production issued to Plaintiffs, Plaintiffs have only agreed to produce documents relating to the copyrighted works asserted in the Complaint. Documents related to Plaintiffs' other works are plainly overbroad and not relevant.

Additionally, the requests seek information about third parties who are not part of this litigation. For example, Request 11 seeks "Your internal Documents and Communications, as well as Documents and Communications between You and any author, publisher, or other third party, Relating to Training data for Generative AI." This request goes beyond the scope of any claims or defenses in the case. Similarly, Request 22 seeks "Documents and Communications Relating to actual or anticipated financial trends in the Book Industry since January 1, 2018, Including changes to the market or demand for books, changes to the unit sale price of books, changes to literary agent compensation, changes to Book-Related Compensation, and the impact of Generative AI on any of the foregoing." This request broadly sweeps in a host of documents untethered to Plaintiffs' claims and defenses including "literary agent compensation," which does not relate to the market for AI training data.

13

At bottom, OpenAI's requests are sweeping and seek a substantial volume of documents which are irrelevant or disproportional to the needs of the underlying litigation.

### iii.    The subpoenas impose an undue burden on the non-parties

Third party subpoenas are disfavored because they inappropriately burden innocent parties. Because the requests seek documents which are (a) obtainable through party discovery, and (b) overbroad and irrelevant, the burden on the non-parties is necessarily undue. *See Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 4166780, at *5 (granting motion to quash as overly burdensome because "the vast majority of the discovery sought by . . . third party subpoenas can be obtained directly from [a party]"); *Akkawi*, 2022 WL 17722605, at *2 ("Courts routinely disallow discovery from third parties where the same discovery is easily obtained from a party.").

Moreover, OpenAI's requests would require the agents and agencies to conduct a broad search and to produce ESI compliant with the Parties' ESI protocol. OpenAI has indicated to Plaintiffs that it seeks to require the agents to search through the files and email accounts of *over 60 individuals*.[3] This is an expensive, invasive, and burdensome endeavor which would require the non-parties to engage an ESI vendor, collect from ESI sources, review those collected documents, and produce them in a specific format. OpenAI's twenty-four document requests are sweeping and require the production of both documents and communications related to every single work that Plaintiffs have ever published, including dozens to hundreds of separate titles per

---

[3] Some of the individuals from whom OpenAI seeks documents are no longer employed by the relevant agencies or are no longer in the business, including Charlotte Seedy, a retired agent now in her 90s, Dan Strone, a retired agent, and the now-defunct agency Burnes & Clegg, Inc. During the course of attempting to compromise on these subpoenas, Plaintiffs identified and offered to search the files of the individuals who would possess the relevant, discoverable documents, but OpenAI rejected Plaintiffs' proposal. Decl. of Melissa Tribble ¶ 15.

Plaintiff. These are not specific, targeted requests for discrete documents. Instead of just locating, for example, an executed publishing agreement, OpenAI seeks all communications related to the negotiation of that agreement, which would require going back through dispersed communications covering decades. These documents may well total tens or hundreds of thousands of pages.

The non-parties have already provided those documents that are relevant and proportional to the needs of the case, including all agreements and royalty statements related to the Plaintiffs' work at issue. Anything beyond those discrete records imposes an undue burden on the non-parties that is not proportional to the needs of the case.

### C.     The Requests Improperly Annoy and Embarrass Plaintiffs

Under Rule 26, courts should "protect a party or person from annoyance [or] embarrassment," wrought through discovery requests. Courts have recognized that a document subpoena to a non-party may harm the relationship between the party and the third party. In the similar employer-employee relationship, courts have found that there is a "legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256 (S.D. Ind. 2002); *see also Richards*, 2007 WL 474012 at *3. The subpoenas here are similarly being used as a tool to harass and embarrass Plaintiffs by interfering with their relationships with their agents, and harm their standing within the book industry. The burden of responding to subpoenas related to a case brought by the Plaintiffs may cause resentment and reputational harm to Plaintiffs, and in turn make their current agents and other literary agents reluctant to continue to work with them.

### D.    Transfer to the Northern District of California is Appropriate

This Court should transfer the Motion to Quash these subpoenas to the issuing court, the Northern District of California, under Rule 45(f). The court of compliance may transfer the motion to the issuing district "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The advisory notes to Rule 45 provide that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* Advisory Comm. Notes (2013). Courts have considered "factors such as judicial economy, docket management, and the risk of inconsistent rulings" in determining whether to transfer a motion to quash. *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *6 (D. Nev. Aug. 15, 2014). Here, many of the nonparties subject to the subpoenas consent to transfer. Decl. of Melissa Tribble ¶ 16; Decl. of Alexander J. Sweatman ¶ 2. Further, there exist exceptional circumstances favoring transfer.

In *Agincourt Gaming, LLC*, the court found that transfer was proper under circumstances similar to those here. In that case, the court found that where there were "overlapping discovery issues [that had] already been briefed" in the issuing court, and "the issued subpoenas require[d] compliance from different non-parties in different districts" the risk of inconsistent rulings "militate[d] heavily in favor of transfer." 2014 WL 4079555, at *7. Further, because of the litigation history in the issuing court, that court possessed "superior familiarity with the underlying issues," and it was therefore in "the interest of judicial economy to transfer the motion." *Id.*

Here, judicial economy and the avoidance of inconsistent rulings heavily favor transferring this motion to the Northern District of California. First, OpenAI has issued fourteen nearly identical subpoenas with compliance required in three different judicial districts. It would serve the interest of judicial economy, and help to avoid inconsistent rulings, for a single court to rule on all of the subpoenas. Further, the subpoenas arise from ongoing discovery disputes which have already been litigated and decided in the Northern District of California. As Plaintiffs argue below, the documents OpenAI seeks are already the subject of Rule 34 Requests for Production, and the subject of a motion to compel which has been decided by the issuing court. Thus, the issuing court has superior familiarity with the relevant discovery disputes, and an interest in resolving the motions to quash consistent with that court's prior discovery rulings. These exceptional circumstances heavily favor transfer to the issuing court.

Moreover, the potential burden on the non-parties does not carry weight here because the non-parties are not bringing this Motion to Quash, have largely consented to transfer, and thus will not be burdened by adjudicating it in a different district. Accordingly, the Court should transfer the Motion to Quash to the Northern District of California.

E.     **The Court Should Award Plaintiffs Costs and Fees**

Plaintiffs request an award of reasonable expenses, including attorneys' fees, incurred in bringing this Motion pursuant to Rule 45(d)(1). As described above, OpenAI failed to take reasonable steps to avoid imposing undue burden on the non-parties, and ignored a court order by noticing and issuing a trove of subpoenas. Plaintiffs made good faith efforts to compromise and limit the burden on these third parties, which OpenAI rejected in the form of a wildly unreasonable and incredibly burdensome proposal that left Plaintiffs no choice but to file this

Motion

## IV.    CONCLUSION

For the reasons listed above, the Court should transfer this motion to the Northern

District of California, and, the Court deciding the Motion should quash each of the subpoenas

served on Plaintiffs' literary agents, and impose sanctions on OpenAI for improperly burdening

the non-parties and Plaintiffs' counsel.


Dated:  March 20, 2025                    Respectfully Submitted,

                                          JOSEPH SAVERI LAW FIRM, LLP.


                                          By:        /s/ Christopher J. Hydal
                                                     Christopher J. Hydal

                                          Christopher J. Hydal (NY State Bar No. 5670492)
                                          Christopher K. L. Young
                                          Melissa R. Tribble
                                          JOSEPH SAVERI LAW FIRM, LLP.
                                          601 California Street, Suite 1505
                                          San Francisco, California 94108
                                          Telephone:  (415) 500-6800
                                          Facsimile:   (415) 395-9940
                                          chydal@saverilawfirm.com
                                          cyoung@saverilawfirm.com
                                          mtribble@saverilawfirm.com

                                          *Counsel for Plaintiff Paul Tremblay et al.,*